COMMISSIONERS OF LEXINGTON *v.* ÆTNA INDEMNITY
COMPANY OF HARTFORD, CONN., ET AL.

(Filed 11 May, 1911.)

1. **Principal and Surety—Indemnity—Judgment—Evidence—Primary and Secondary Liability—Admissions of Record—Appeal and Error.**

When a city and its contractor for work on the former's street have both been held liable for a negligent act causing injury to a pedestrian on the street, without adjudicating as to which was

primarily liable, the judgment is not evidence of such liability in a subsequent action brought by the city to recover damages against the contractor and his indemnitor, but, in this case it appears from the record that, upon the undisputed facts, the city was only secondarily liable, and the Court so adjudges without further inquiry.

2. Principal and Surety — City — Indemnity — Supervision — Negligence—Primary and Secondary Liability—In Pari Delicto.

A city and a construction company are not *in pari delicto* as to a negligent act of the latter directly causing injury to a pedestrian on the street, though the city may also be liable to the pedestrian in not exercising the supervision over its streets required by law, and thus averting the consequence of such negligence.

3. Same—Evidence.

When it appears of record that a city and its contractor for public improvements had been held in damages in a former suit by a citizen caused directly by the contractor's negligent act without any participation by the city, the primary liability of the contractor, as between him and the city, is established, notwithstanding the city was negligent in permitting the continuance of the contractor's negligent act.

4. Cities and Towns—Contracts—Public Works—Indemnity—Scope.

An indemnity company entered into an agreement with a city to save it harmless from any negligence of a contractor in the performance of certain work upon the city's street and from damages recovered in all suits against it for any injuries sustained by any person by or from any cause under its control while in the construction of the streets, or by reason of any negligence in guarding the same, etc. *Held*, the contract, by its very terms, embraced an injury caused to a pedestrian upon one of the city's sidewalks at night by reason of his falling into an unguarded trench, left by the contractor without a light or other signal of warning.

5. Same—Instructions—Harmless Error.

A city being indemnified against loss caused by the negligent acts of its contractor for public improvements upon its streets, was sued with the contractor, and damages against both recovered. It appearing of record, upon facts admitted, that the primary liability of the contractor was established, it was harmless error for the trial judge to instruct the jury that the primary liability of the construction company should be determined by the terms of the indemnity bond.

6. Cities and Towns — Contracts — Indemnity—Former Judgment—
Secondary Liability—Judgment—Admitted Facts—Recovery.

It appearing from the admitted facts in this case, which was
brought by a city against its contractor and the company which
had agreed to indemnify it from all loss by reason of his negli-
gence, that the city was secondarily liable, as between itself and
its contractor, for his negligent act in causing damage to a pedes-
trian upon its streets, and that a judgment for damages against
both had been recovered, the city, having paid the judgment, can
recover the same from the indemnity company, under the terms
of the bond of indemnity.

7. Cities and Towns—Public Work—Contracts—Public Policy.

It is lawful and not against public policy to indemnify a city
against loss sustained by the negligent act of one who contracts
with it to improve its public streets.

APPEAL from *Daniels, J.,* at the November Term, 1910, of
DAVIDSON.

The West Construction Company contracted with the town of
Lexington to do certain work in grading, paving, macadamizing
and otherwise improving its streets, according to plans and speci-
fications furnished, and to secure the faithful performance of
the work in a proper and careful manner it executed to the town
its bond, with the other defendant, Ætna Indemnity Company,
as surety, by which it agreed to indemnify the town and save it
harmless "from all suits, actions, proceedings of every name or
description, in law or equity, brought against the said town or
any officer or officers, agents or servants thereof, for or on
account of any injuries or damages received or sustained by any
person, structure or property, by or from said contractor, his
servants or agents, and also to indemnify and save harmless the
said (town) from all suits or actions for any injuries or damages
sustained by any party or parties by or from any causes under
the control of said contractor while in the construction of the
streets or any part thereof, or any negligence in guarding the
same, or by or on account of any act of omission of said con-
tractor or his agents or employees." The construction company,
while in the prosecution of the work, caused a trench to be dug
across a sidewalk and piled earth and rocks near it, which made
it very dangerous to the public using the street, and failed to

place lights or barriers around it, so as to warn pedestrians and render the use of the sidewalk safe. C. M. Clodfelter, while walking along the sidewalk at night, fell into the excavation, without any negligence or fault on his part, and was seriously injured. He brought an action against the town and the construction company, alleging substantially the foregoing facts, and further that he was injured by the negligence of the construction company in digging the trench and not properly safeguarding it, and by the negligence of the town, in that the latter did not cause the trench to be thus safeguarded by lights or barriers, in order 'to prevent injury to persons passing along the sidewalk. There was a recovery in that action against the town and the construction company upon issues and a verdict of the jury, which found that Clodfelter had been injured by the negligence of the construction company and the town, as alleged in the complaint; that is, that the construction company was negligent in not putting up lights or barriers at the trench to prevent injury to pedestrians, and that the town was negligent for the same reason. The jury assessed Clodfelter's damages at $1,700, and, judgment was entered upon the verdict for that amount, which was paid by the town. The indemnity company was duly notified of the pendency of that action and requested to come in and defend the same. This action was brought against the construction company and the indemnity company, as its surety upon their bond, to recover the amount of damages sustained by the plaintiff, and costs. Issues were submitted to the jury and found in favor of the plaintiff. Judgment was rendered upon the verdict for the damages assessed, and the defendant appealed.

*Emery E. Raper for plaintiff.*
*Walser & Walser for defendant.*

WALKER, J., after stating the case. As a general rule, when indemnity is sought by one who has been adjudged liable for damages arising from negligence for which another, as between themselves, is primarily liable, the judgment in the action against the former is evidence in the action brought for indemnity that the defendant in the first action, plaintiff in the second, was liable for the damages, and when notice has been given to

defend, of the amount of the damages arising from the injury, but it does not establish which of the wrongdoers is primarily liable, unless that question was involved in the issue and decided. *Mayor v. Brady,* 70 Hun., 250; *O. S. Nav. Co. v. C. T. Espanola,* 134 N. Y., 461. But in this case we are of the opinion that the judgment in the first action must be given greater effect than it would have under the ordinary rule, as by referring to the record in that case, which was in evidence, we can see clearly, by reading the verdict in connection with the pleadings, that the jury have found such facts as establish the primary liability of the West Construction Company for the injury to Clodfelter; and, besides, the undisputed facts in this case show the same liability. The facts are that the construction company dug the trench and failed to place lights there or to erect barriers around the trench to warn persons using the walk. It was the author of the injury and the principal wrongdoer. As between it and the town, the latter has committed no wrong. An illustration of the rule will be found in *Mayor v. Brady, supra,* where it is said: "The right to lay the pipe carried with it to the contractors the obligation to so protect and guard it as to warn passers-by and thus save them from injury. Consent by a municipal corporation to a person to do a lawful act merely permits it to be done in a careful, prudent and lawful manner, and when it is performed in any other manner, and injury to third persons ensues, the author of the injury is liable therefor. Had the contractors performed their full duty by so guarding the pipe as to warn travelers of its presence on the walk, there could have been no recovery in the action of Cruikshank against the city." So, in *Port Jervis v. Bank,* 96 N. Y., 550, it was said: "It is well settled that a municipal corporation which has been compelled to pay a judgment recovered against it for damages sustained by an individual through an obstruction, defect or excavation in the sidewalk or street of such corporation, has an action over against the person who negligently or unlawfully created the defect which causes the injury. (*City of Rochester v. Montgomery,* 72 N. Y., 67, and cases there cited.) This liability grows out of the affirmative act of the defendant and renders him liable not only to the party injured, but also mediately liable to any party who

has been damnified by his neglect. Liability in such a case is predicated upon the negligent character of the act which caused the injury and the general principle of law which makes a party responsible for the consequences of his own wrongful conduct. (*Clark v. Fry*, 8 Ohio St., 359; *Ellis v. Sheffield Gas Co.*, 75 Eng. C. L., 767.) Consent given by a corporation to a citizen to make an excavation in a public street does not vary the rights or liabilities of the parties in respect to such a cause of action when it is based upon the wrongful and negligent manner in which the act was done, and not upon its unlawfulness. Upon receiving a license from the body authorized to grant it to dig in a street, the licensee impliedly agrees to perform the act in such a manner as to save the public from danger and the municipality from liability." The town of Lexington had a right to suppose that the construction company would guard the excavation it had made, so as to prevent injury to the public. "Under such circumstances, the parties cannot be said to be *in pari delicto.* It is true that the plaintiffs thereby became liable to the party who suffered injury in consequence of this neglect, but they were under no obligation to shield the defendants from the consequence of their own omissions. The decisions in *Swansey v. Chace,* 16 Gray, 303, and other cases above cited, fully sustain the position that the party which placed the obstruction in the highway cannot resist the claim of the town to indemnity for damages paid, on the ground that the neglect of the town to remove the obstruction contributed to the injury." *Woburn v. R. R.,* 109 Mass., 283. But more to the point is the decision in the leading case of *Lowell v. R. R.,* 23 Pick., 24, where the principle was thus stated and applied: "The distinction in all these cases is the same. The parties are not *in pari delicto,* and the principal offender is held responsible. This distinction is manifest in the case under consideration. The defendants' agent, who had the superintendence of their works, was the first and principal wrongdoer. It was his duty to see to it that the barriers were put up when the works were left at night; his omission to do so was gross negligence, and for this the defendants were clearly responsible to the parties injured. In this negligence of the defendants' agent the plaintiffs had no participation. Their

subsequent negligence was rather constructive than actual. The most that can be said of it is that one of their selectmen confided in the promise of the defendants' agent to keep up the barriers, and by this misplaced confidence the plaintiffs have been held responsible for damages to the injured parties. If the defendants had been prosecuted instead of the town, they must have been held liable for damages, and from this liability they have been relieved by the plaintiffs. It cannot, therefore, be controverted that the plaintiffs' claim is founded in manifest equity. The defendants are bound in justice to indemnify them so far as they have been relieved from a legal liability, and the policy of the law does not in the present instance interfere with the claim of justice. The circumstances of the case distinguish it from those cases where both parties are *in pari delicto,* and one of them, having paid the whole damages, sues the other for contribution." The case of *Waterbury v. Traction Co.,* 74 Conn., 152, presented facts very similar to those in this case, and the Court held: "The primary cause of the accident was the act and fault of the defendant in taking down the railing and failing to restore it, assuming that the defendant took it down, as alleged. As between the plaintiff and defendant, there was no co-operation in the act of negligence which caused the injury. The plaintiff did not permit the defendant to leave the railing down. If the defendant took it down, it promised, impliedly, if not expressly, to do so in a way not to endanger public travel, and to put it up again. If it failed to keep that promise, it cannot justly charge the plaintiff with negligence, either in having relied upon such promise or in having failed to compel its performance. If the defendant removed the railing and left it down, as alleged, the fact that the plaintiff had knowledge of the defect and neglected to repair it, although it had a fair opportunity to do so, will not prevent a recovery in this action." The subject was discussed to some extent in *Gregg v. Wilmington,* at this term, and the two cases, while not precisely alike, have some features in common.

The jury in this case, under the instructions of the court, found that the injury was caused by the negligence of the West Construction Company, and that, as to Clodfelter, the town of

Lexington concurred in that negligence, but that the construction
company was primarily liable, as between it and the town.   This
is the meaning of the verdict, when it is read in the light of the
evidence and the charge of the court.   So far as the liability of
the construction company to the town is concerned, the fact that
the city did not guard against the consequences of the negligent
act committed by the construction company by lighting the dan-
gerous place or erecting barriers there, does not prevent its
recovery against that company for its primary negligence.   The
original wrong, which caused the injury, was done by it and not
by the town, and, as between the two, it cannot be correctly said
that the town participated in its wrong or was co-delinquent or a
joint *tort feasor*.   If the town was under the obligation to see that
the negligence of its contractor was so guarded against as to pre-
vent injury to pedestrians, and to take proper measures of pre-
caution for that purpose, before it could recover from him such
damages as it had been compelled to pay to a person injured by
his negligence, the doctrine we have stated would be of little or
no practical value for the protection or indemnification of the
town.   If the construction company had given proper warning to
Clodfelter as he approached the trench, by lights, or had erected
sufficient barriers there to prevent his falling in it, the accident
would not have happened, whether the town had lighted its
streets or not.   The wrong done to Clodfelter is, therefore, trace-
able directly to its negligence in having an unguarded trench in
the sidewalk.   It had promised with its surety that the work of
construction should be performed carefully and that the town
should be indemnified from "all suits against it for any injuries
or damages sustained by any person by or from any cause under
its control, while in the construction of the streets or any part
thereof, or any negligence in guarding the same, or by or on
account of any act or omission of said contractor or its agents or
employees."   This provision is certainly broad enough in its
terms to cover this case and to entitle the plaintiff to full indem-
nity from loss by reason of the negligence of the construction
company, which caused the injury to Clodfelter.   The judge may
have erred when he told the jury that the primary liability of
the construction company should be determined by the terms of

the indemnity bond, but this is not such an error as will vitiate
the trial, for the reason that it appears from the entire case and
the real facts, which are not disputed, that the primary liability
did exist in law, and consequently that the defendants are liable
to the plaintiff. We would grant a new trial for this error if we
thought it was a substantial and prejudicial one, but we do not
think so. The main question upon which the case was contested
in the court below and in this Court by the defendants we have
decided against them, and if the case should be returned to the
court below for another trial the result upon the facts must
inevitably be against the defendants. It would therefore serve
no useful purpose to do so. In *Cherry v. Canal Co.,* 140 N. C.,
422, *Justice Hoke* thus states the rule which should prevail in
such cases: "In 2 Am. & Eng. Enc. Pl. & Pr., 499, we find it
stated that 'appellate courts deal with judicial acts, and it would
not avail to reverse a ruling or judgment correct on the record,
though it may be founded on an erroneous reason.' And, again,
in the same volume, at page 500: 'This system of appeals is
founded on public policy, and appellate courts will not encourage
litigation by reversing judgments for technical, formal or other
objections which the record shows could not have prejudiced the
appellant's rights.' The decided cases in this and other jurisdic-
tions support this position. In *Butts v. Screws,* 95 N. C., 215,
*Ashe, J.,* for the Court, says: 'A new trial will not be granted
when the action of the trial judge, even if erroneous, could by no
possibility injure the appellant.' See, also, *Ratliff v. Huntly,* 27
N. C., 545; *Fry v. Bank,* 75 Ala., 473. The rule also finds sup-
port in the case of *Shackleford v. Staton,* 117 N. C., 73." The
verdict and judgment, upon the merits of the case, were right.
*City of Rochester v. Montgomery,* 9 Hun., 394; *Brookville v.
Arthurs,* 130 Pa. St., 501; *Seattle v. Regan,* 52 Wash., 262; *Mil-
ford v. Holbrook,* 9 Allen, 17. But we think the instruction of
the court on the sixth issue, as to the primary liability of the
construction company, may be sustained as a correct one, in the
following view of it. It must, of course, be considered and con-
strued with reference to the pleadings, the facts of the case and
the issues. The construction company, as we have shown, com-
mitted the original wrong, which caused the injury, and the city

was not, in a legal sense, *particeps delicti.* It was liable to Clod-felter, because it failed to discharge the duty of keeping the walk in proper repair and preventing injury to others from the wrong of the construction company. This brought the case within the terms of the indemnity bond, and by its very words the construction and indemnity companies are liable over to the town for what it has paid under the judgment, with reasonable attorney's fees and costs. The question of primary and secondary liability, as between the plaintiff and the construction company, depended upon whether they were joint tort feasors, and not upon the fact that a bond had been given to indemnify the town; but as it appears that they did not unite in committing the wrong, the construction company being the active and principal offender, the court properly instructed the jury that the defendants were liable upon their undertaking to indemnify the plaintiff from "any negligence in guarding the trench" or from the consequences of "any act or omission of the construction company," and directed the jury to answer the issue in the affirmative, as the execution of the bond was admitted. This was correct, even if they were not otherwise liable.

The contract of indemnity between the plaintiff and defendants was a lawful one. There is no stipulation in it which is contrary to public policy. *R. R. v. S. R. News Co.,* 151 Mo., 373; *T. P. R. R. v. G. L. Indemnity Co.,* 60 N. J. Law, 246.

We find no error in the case.

No error.